UNITED STATES, Appellee,

v.

Robert B. WHEELEY, Jr., Sergeant, U. S. Marine Corps, Appellant.

No. 34,062.
NCM 76–1910.

U. S. Court of Military Appeals.

Feb. 20, 1979.

For Appellant—*Lieutenant Christopher C. Henderson,* JAGC, USNR (argued); *Lieutenant Karl Zobrist,* JAGC, USNR (on brief).

For Appellee—*Captain Christopher Miller Klein,* USMC (argued); *Lieutenant Colonel P. N. Kress,* USMC; *Lieutenant Commander N. P. DeCarlo,* JAGC, USN; *Captain W. D. Blalock,* USMCR.

Opinion of the Court

COOK, Judge:

Appellant was convicted by general court-martial of conspiracy to commit extortion, extortion, and graft (3 specifications), in violation of Articles 81, 127, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 927, and 934, respectively. We granted review to determine whether the court-martial had jurisdiction over appellant's person. We conclude that it did.

At trial the defense moved to dismiss all charges on the basis that the expiration of appellant's term of enlistment, prior to trial, divested the court of jurisdiction. Evidence relevant to this motion reflects that on November 1, 1975, appellant was as-

signed to the office of the Criminal Investigation Division (CID), Marine Corps Base, Camp Butler, Okinawa. As a result of information which had been received by authorities implicating the appellant in several criminal acts, he was apprehended on that date. Appellant executed a confession on the same day. He was interviewed by the CID for a second time on November 10. Appellant's term of enlistment expired on January 9, 1976. A week later, he was placed in a "legal hold" status. Charges were preferred on January 26, and were referred to a general court-martial on March 20.

Staff Sergeant Handy testified that the appellant had made several inquiries prior to trial as to the status of his case. He further noted that the appellant stated he hoped the "matter would be cleared up . . . so he could stay in the Marine Corps." Appellant testified he submitted a request to reenlist on October 10, 1975, and the request was approved on October 30, but reenlistment was never effectuated. His testimony as to his intent on reenlistment is as follows:

Q. What were your desires regarding reenlistment if charges . . . if no charges were preferred?
A. I was going to reenlist, sir.
Q. Now, if charges were going to be preferred, did you have any desires?
A. Yes, sir, I would have gotten out of the Marine Corps, sir.

Appellant further stated that on October 30, he desired to remain in the Marine Corps, but he realized on the day of his apprehension that he would not be allowed to reenlist. His scheduled date of rotation to the United States was December 21, but he maintained he was retained on Okinawa "because one of my options was to stay on Okinawa with reenlistment guarantee." He conceded he had never told anyone he did not desire to remain in the Marine Corps if charges were preferred.

1. 10 U.S.C. § 831.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

Staff Sergeant Watson testified he apprehended the appellant on November 1. Appellant was taken to Watson's office, advised of his Article 31, UCMJ,[1] and *Miranda/Tempia*[2] rights, and of the nature of the offenses under investigation. Later in the day, he executed a confession.

Other evidence reflects that appellant was released from apprehension, but was placed under some form of restriction on November 1, which was removed the next day. Appellant requested, and received, a new military identification card on January 15, 1976. Documentary evidence indicates that no entry had been made on the appellant's service record to the effect that he had been extended on active duty, although MCO P1070.12C, para. 4013.3z, dated July 8, 1975, provides for the recording of such information. Other documentary evidence promulgated by CG MCB CAMBUT JA, dated January 28, 1976, provides that appellant had been involuntarily extended past his expiration of active service (EAS). Finally, MCO 1300.8K (enclosure 3), dated May 16, 1974, which requires approval form Headquarters, United States Marine Corps, for an involuntary extension of an overseas tour, was admitted into evidence.

On this appeal, the appellant submits that, while Article 2(1)[3] permits the exercise of court-martial jurisdiction over members of the armed forces "awaiting discharge after expiration of their terms of enlistment," jurisdiction over him was lost upon the expiration of his term of enlistment because the Government did not commence an action with a view toward trial before such date. The Government submits that jurisdiction exists under two separate grounds: first, appellant acquiesced in his retention; and second, the Government had acted with a view toward trial prior to the termination of appellant's enlistment.

3. Uniform Code of Military Justice, 10 U.S.C. § 802(1).

This Court has long recognized that enlistment in an armed force establishes a status which does not terminate by the mere expiration of the term of enlistment. *United States v. Hout,* 19 U.S.C.M.A. 299, 41 C.M.R. 299 (1970), and cases cited therein. The principle has recently been reaffirmed in *United States v. Smith,* 4 M.J. 265 (C.M.A.1978),[4] and *United States v. Hutchins,* 4 M.J. 190 (C.M.A.1978). As we said in *Hutchins:*[5]

> A person subject to the Code continues in service until the formalities of a discharge or release from active duty have been met or he objects to his continued retention and a reasonable time expires without appropriate action by the Government.

Under the circumstances of the present case, it is clear that appellant's military status did not terminate prior to trial. Indeed, rather than object to his continued retention, he affirmatively sought a reenlistment and expressed the hope that the investigation would be resolved in a manner which would permit such reenlistment. Although he testified that he would have "gotten out" if charges were preferred, in context this was not a demand for release from active duty, but a wish that he could remain in the Marine Corps without the burden of a court-martial. Appellant explained his failure to be returned to the United States upon expiration of his tour of duty in Okinawa, on the basis that he could be guaranteed a reenlistment if he remained in an overseas area. Thus, appellant not only consented to his military status, but he affirmatively sought its extension. It is apparent that he regarded his status as continuing and that he was still subject to court-martial jurisdiction. Furthermore, neither the failure of the authorities to make an administrative entry in the appellant's personnel file nor the fact that the document effecting the extension of his enlistment post-dated his enlistment termination date constituted a termination of that status or any condition to the retention of jurisdiction. *United States v. Hutchins, supra.*

The record reflects that appellant was apprehended and restricted prior to the expiration of his term of enlistment. Paragraph 11*d,* Manual for Courts-Martial, United States, 1969 (Revised edition), sets forth the following:

> *d. Effect of termination of term of service.* Jurisdiction having attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges—continues for all purposes of trial, sentence, and punishment. If action is initiated with a view to trial because of an offense committed by an individual before his official discharge—even though the term of enlistment may have expired—he may be retained in the service for trial to be held after his period of service would otherwise have expired. Similarly, if jurisdiction has attached by the commencement of action before the effective terminal date of self-executing orders, a person may be held for trial by court-martial beyond that terminal date. See also Article 2(1).

In *United States v. Smith, supra,* the Court observed that paragraph 11*d* was only illustrative and not exclusive as to what matters constituted the requisite "commencement of action," but that some affirmative action was required. Apprehension is, however, specifically set forth in paragraph 11*d* as an action with a view toward trial. Furthermore, the appellant was advised of the nature of the offenses under investigation.[6] Certainly under such circumstances there was a "commencement of action with a view to trial" prior to the

---

4. The present case is to be distinguished from *United States v. Smith,* 4 M.J. 265 (C.M.A. 1978), which involved a self-executing order that effected the accused's discharge upon the date set forth in the order.

5. *United States v. Hutchins,* 4 M.J. 190, 192 (C.M.A.1978).

6. In view of the disposition we order today we need not address the government's argument that the appellant's retention in an overseas area beyond the expiration date of appellant's tour of duty was sufficient to constitute an action with a view toward trial. Apparently, appellant did not object to such extension and viewed it as a means to obtain a reenlistment,

expiration of appellant's term of enlistment and charges were preferred within a reasonable time thereafter. Thus, jurisdiction continued. *See United States v. Smith, supra.*

The decision of the United States Navy Court of Military Review is affirmed.

Judge PERRY· concurs.

although the approval from Headquarters, United States Marine Corps, pursuant to MCO 1300.8K (enclosure 3), dated May 16, 1974, was

Chief Judge FLETCHER (concurring in the result):

I agree with the conclusion reached by the majority that this unusual factual situation falls within a reading of *United States v. Hutchins,* 4 M.J. 190 (C.M.A.1978). My concurrence here in no way affects my position as stated in *United States v. Smith,* 4 M.J. 265 (C.M.A.1978).

not obtained prior to the normal expiration date.